**IN THE U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**
JAN 06 2017
ARTHUR JOHNSTON
BY _____ DEPUTY

**IKECHUKWU OKORIE, M.D.,
ST. MICHAEL'S URGENT CARE
OF HATTIESBURG, LLC, INLAND
FAMILY PRACTICE CENTER, LLC**                                    **PLAINTIFFS**

**v.**                                    **CAUSE NO.** 2:17cv2-KS-MTP

**ACE FUNDING SOURCE, LLC,
RAM CAPITAL FUNDING, LLC,
ML FACTORS, LLC, STEVE REICH,
SMALL BUSINESS CAPITAL
SERVICES, MICHAEL KATZ, HENRY
GUTTMAN, WELLS FARGO BANK
NATIONAL ASSOCIATION,
and DOES ONE THROUGH TEN**                                    **DEFENDANTS**

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Plaintiffs Ikenchukwu Okorie, M.D. ("Dr. Okorie"), St. Michael's Urgent Care of

Hattiesburg, LLC ("St. Michael's"), and Inland Family Clinic Practice Center, LLC ("Inland")

file this Verified Complaint for a Temporary Restraining Order and Preliminary Injunction

against Defendants Wells Fargo Bank National Association ("Wells Fargo"), Ace Funding

Source, LLC ("Ace"), Ram Capital Funding, LLC ("Ram"), ML Factors, LLC ("ML"), Steve

Reich ("Reich"), Small Business Capital Services ("SBCS"), Michael Katz ("Katz"), Henry

Guttman ("Guttman"), and Does One through Ten, and for cause of action state as follows:

**PARTIES**

1.      Dr. Okorie is an adult resident citizen of Lamar County, Mississippi.

2.      St. Michael's is a limited liability company organized and existing under the laws

of the State of Mississippi, with its principle place of business located in Hattiesburg, Forrest

County, Mississippi.

1

3.     Inland is a limited liability company organized and existing under the laws of the State of Mississippi, with its principle place of business located in Hattiesburg, Forrest County, Mississippi.

4.     Wells Fargo is a nationally chartered bank organized and existing under the laws of the United States, with its principal place of business located at 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104, which may be served with process by serving its agent, Corporation Service Company, at 5760 I-55 North, Suite 150, Jackson, Mississippi 39211.  Wells Fargo is licensed to do business in the State of Mississippi, and conducts continuous and systematic business in this State.

5.     Ace is a limited liability company organized and existing under the laws of the State of New York, which may be served with process by serving its agent, Michael Ehrenreich, at 366 North Broadway, Suite 410, Jericho, New York 11753.  Ace is not licensed to do business in Mississippi, but at all relevant times did business in this State.

6.     Ram is a company which may be served with process at 1361 North Railroad Avenue, Staten Island, New York 10306.  Ram is not licensed to do business in Mississippi, but at all relevant times did business in this State.

7.     ML is a limited liability company organized and existing under the laws of the State of New Jersey, which may be served with process at 428 Central Avenue, Suite B and/or 456A Central Avenue, Suite 128, Cedarhurst, New York 11516.  ML is not licensed to do business in Mississippi, but at all relevant times did business in this State.

8.     Reich is an adult resident citizen of the State of New York who may be served with process at 1361 North Railroad Avenue, Staten Island, New York 10306.

2

9.      SBCS is the name of an entity by and through which Defendant Katz conducts business, but is not listed in the New York Secretary of State's database as organized and/or existing under the laws of the State of New York.   SBCS may be served with process by serving Michael Katz, at 3611 14th Avenue, New York, New York 11218.   SBCS is not licensed to do business in Mississippi, but at all relevant times was doing business in this State.

10.     Katz is an adult resident citizen of the State of New York who may be served with process at 3611 14th Avenue, New York, New York 11218.

11.     Guttman is an adult resident citizen of the State of New York who may be served with process at 366 North Broadway, Suite 410, Jericho, New York 11753.

12.     Does One through Ten are persons and/or entities whose identities are unknown at the time this Complaint was filed, but who caused or contributed to Dr. Okories injuries and damages by engaging in the unlawful actions alleged herein.   The identities of Does One through Ten are unknown as a result of the Defendants' practice of intentionally providing false and fictitious names and identities to the Plaintiffs, and by creating and using the names of multiple existent and non-existent entities interchangeably in their dealings with the public and with the Plaintiffs in an attempt to conceal their true identities and thus remain unaccountable for their unlawful conduct.

## VENUE AND JURISDICTION

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because it is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14.     This Court may exercise supplemental jurisdiction over all state law claims asserted in this action 28 U.S.C. § 1367.

15.     The assertion of personal jurisdiction over the Defendants is proper in Mississippi pursuant to Miss. Code Ann. § 13-3-57, because the Defendants entered into and breached one or more contracts with the Plaintiffs who are Mississippi residents to be performed in this State; conducted business in the State of Mississippi; and committed torts in Mississippi against the Plaintiffs.  The assertion of personal jurisdiction over the Defendants in Mississippi does not offend traditional notions of fair play and substantial justice and otherwise comports with the requirements of due process.

  a.  The Defendants purposefully directed their wrongful activities at the Plaintiffs in Mississippi, which caused them harm and injury in Mississippi, and this case arises out of those activities;

  b.  The Defendants knew or should have reasonably anticipated that their unlawful actions would have an adverse impact on the Plaintiffs in Mississippi, or knew or should have known that it was highly likely that such effects would follow from their conduct;

  c.  General personal jurisdiction is appropriate over one or more of the Defendants because their contacts with this State are systematic and continuous; and/or

  d.  Specific personal jurisdiction is appropriate over one or more of the Defendants because a nexus exists between this lawsuit and their activities within Mississippi.

16.     Venue for this action is proper in the Southern District of Mississippi under 28 U.S.C. § 1391 because the Defendants' unlawful conduct occurred, in whole or in part, in this

District, and the Defendants' intentional and unlawful acts proximately caused the Plaintiffs to incur injuries in this District.

## FACTUAL ALLEGATIONS

17.     Born in Nigeria, Dr. Okorie came to this country when he was 19 years old as a result of a "VISA lottery" won by his mother.

18.     Through extraordinary diligence, hard work and discipline, Dr. Okorie learned English and worked his way through college, medical school, and a residency to become a physician.

19.     After his residency, Dr. Okorie came to Mississippi to provide medical care for the poor, initially working for Southeast Mississippi Rural Health Initiative.

20.     Dr. Okorie is now the owner of St. Michael's and Inland, medical clinics through which he provides medical services in the Hattiesburg, Mississippi area, primarily to poor and otherwise substantially unserved Medicare and Medicaid patients.

21.     Beginning in 2015, the Defendants fraudulently induced the Plaintiffs to enter into a series of patently illegal loans (the "Loans"), which the Defendants deceptively labeled "factoring agreements," whereby the Defendants purported, among other things, to purchase and take an assignment of all the Plaintiffs' present and future accounts receivable at a significant discount.   Composite Exhibit "A".

22.     Payments to the Plaintiffs from Medicare and Medicaid comprise a vast majority of the accounts receivable purportedly assigned to and purchased by the Defendants.

23.     The so-called "factoring agreements" are actually *loans* and *not true sales of accounts receivable*.

5

24.    The Defendants deliberately mischaracterized the Loans as "factoring agreements" to disguise the true nature of the transactions and circumvent laws under which the agreements themselves and the Defendants' efforts to enforce them are governed and/or prohibited.   For example, Defendants have charged and collected from the Plaintiffs annual interest rates far greater than twice which applicable usury laws allow.

25.    Before the transactions at issue were even entered into, and as a condition for extending credit to the Plaintiffs, the Defendants required the Plaintiffs, including Dr. Okorie, to sign Affidavits and Confessions of Judgment (each, a "Confession of Judgment").   *See* Composite Exhibit "B".

26.    The Defendants also required Dr. Okorie to sign a personal guaranty that Defendants would be paid in full on each of the Loans.   Composite Exhibit "C".

27.    The Plaintiffs have repaid the Defendants many times over.   However, the usurious and egregiously unlawful terms of the Loans, combined with the Defendants' improper practices in administering and "flipping" them, have caused the purported balance of the alleged indebtedness to balloon to over $300,000 in a year and a half.

28.    In addition to the usurious interest rates, the Loans' repayment terms are equally if not more egregious and unconscionable.   The Defendants presently require the Plaintiffs to pay them **thousands of dollars per day**, which they automatically draft out of Plaintiff St. Michael's operating bank account at Wells Fargo each business day.

29.    When in early December 2016 the Plaintiffs could no longer afford make such high payments and remain in business, the Defendants began a relentless campaign of outrageous and intolerable threats, abuse and harassment against Dr. Okorie personally in an attempt to

pressure him into resuming payments.   Among other things, the Defendants have:

    a.  Misrepresented to Dr. Okorie that he committed a crime and expressly threatened to file criminal charges against him, Exhibit "D";

    b.  Told Dr. Okorie that they intend to file charges against him with the Mississippi State Board of Medical Licensure and cause him to lose license to practice medicine, Exhibit "E";

    c.  Continuously and repeatedly harassed Dr. Okorie by calling and texting his cell phone literally hundreds of times over the Christmas holidays, Exhibit "F";

    d.  Misrepresented the character, amount, and legal status of the alleged indebtedness on numerous occasions (e.g., "Don't know how you think its (sic) ok to steal 150k from me and expect me to do nothing."), Exhibit "D"; and

    e.  Used egregiously, unlawful, abusive and threatening language by, *inter alia*, warning Dr. Okorie that he was "making the biggest mistake your life"; "You … are done"; "Don't say I didn't warn you when you are crying to me dr"; and "I won't sleep until I get paid Dr I promise you that."   Exhibit "D".

30.      Despite the rank illegality of the Loans, Dr. Okorie repeatedly pleaded with the Defendants for time to restructure his debts and their outrageous payment terms, so that he could afford to pay them.   However, the Defendants callously ignored Dr. Okorie's requests and continued to relentlessly harass, abuse and threaten him.

31.      On or about December 27, 2016, Ace enrolled a "Judgment by Confession" in a

7

case styled *Ace Funding Source, LLC v. St. Michael's Urgent Care of Hattiesburg, LLC, Inland Family Practice Center, LLC d/b/a St. Michael's Urgent Care of Hattiesburg, Inland Family Practice Center, and Ikechukwu Okorie*, in the Supreme Court of the State of New York, County of Richmond, Index No. 16 151798/2016.   Exhibit "G".

32.    Also on or about December 27, 2016, Ram used the Confession of Judgment it obtained from the Plaintiffs to enter a Judgment against the Plaintiffs.   Exhibit "H".

33.    Ace and Ram have used the Confessions of Judgment / Judgments by Confession to immediately seize and withdraw all funds not only from St. Michael's bank account at Wells Fargo, but also from Dr. Okorie's personal checking and savings accounts at Wells Fargo.

34.    The Judgments by Confession / Confessions of Judgment are void or voidable as a matter of law.   Among other reasons, those documents are based upon Loans in which the Defendants have charged and collected, and continue to charge and collect, interest at a usurious rate that is at least twice the acceptable limits, in some instances over 100%.

35.    Wells Fargo not only allowed Defendants Ace and Ram to seize and freeze the Plaintiffs' bank accounts at Wells Fargo, but also unlawfully permitted them to snatch all the funds from the Wells Fargo accounts without notice to the Plaintiffs, and without conducting appropriate due diligence to ensure the so-called "Judgments" and "garnishments" were valid.

36.    At a minimum, the Defendants have and continue to deliberately and repeatedly commit the torts of intentional infliction of emotional distress, abuse of process and conversion. Their actions also constitute clear violations of the Fair Debt Collection Practices Act, the Mississippi Racketeer Influenced and Corrupt Organization ("RICO") Act, and applicable state usury laws.

8

37.     The Defendants' blatantly unlawful conduct continues to this day and is causing immediate and irreparable harm to the Plaintiffs, and specifically to Dr. Okorie.   Unless enjoined by this Court, the Defendants' egregious actions will further continue.

**MISSISSIPPI LAW GOVERNS, AND VENUE IS PROPER IN MISSISSIPPI**

38.     The Loans contain choice-of-law and forum/venue provisions designating New York and its laws as the appropriate venue and governing law for any disputes arising under the Loans.   Enforcement of these provisions would be unreasonable, inequitable, and improper.

39.     Mississippi's choice-of-law rules are to be applied in this case.   *Ellis v. Trustmark Builders, Inc.,* 625 F.3d 222, 225 (5th Cir. 2010) ("In cases where subject matter jurisdiction is based on diversity of citizenship, the court must apply the choice of law rules of the forum state.").

a.      Under Mississippi's "center of gravity" doctrine, the Court should apply Mississippi law in this case.

b.      Mississippi "has the most significant relationship to the event and parties or, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation." *Mitchell v. Craft,* 211 So. 2d 509, 514-15 (Miss. 1968).

40.     Venue is appropriate in Mississippi despite the Loans' "forum selection clause" because:   (a) the incorporation of the forum selection clause into the agreements was the product of fraud or overreaching; (b) the Plaintiffs will for all practical purposes be deprived of their day in court because of the grave inconvenience or unfairness of the selected forum; (c) the fundamental unfairness of the chosen law will deprive the Plaintiffs of a remedy; and (d)

enforcement of the forum selection clause would contravene a strong public policy of the forum state. *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997); *Boardman v. USAA*, 470 So. 2d 1024, 1038 (Miss. 1985) ("[N]o foreign state's substantive law will be enforced in courts of this state where to do so would be offensive to the deeply ingrained or strongly felt public policy of the state.").

## REQUEST FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

41.    Pursuant to Fed. R. Civ. P. 65, the Court should issue a temporary restraining order without notice effective until such time as a hearing can be held on the Plaintiffs' request for a preliminary injunction.

42.    Because the acts sought to be enjoined are unlawful and clearly against the public interest, the Plaintiffs are not required to show irreparable injury, that the balance of hardship is in their favor, or a likelihood of success on the merits.   Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2948.4 (1995) (citations omitted).   However, in this case, each of those factors is nonetheless present and compels the issuance of injunctive relief.

### *Likelihood of Success on the Merits*

43.    The purported Contracts and Confessions of Judgment upon which the Defendants base their actions are against the public policy of Mississippi, and therefore void *ab initio*.   Moreover, the Defendants' actions constitute violations of numerous federal and state statutes and torts, as well as a clear deprivation of Dr. Okorie's constitutional right to due process.

44.    The Plaintiffs are substantially likely to prevail on the merits in this case.   See Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2948.3 (1995) ("All courts

agree that plaintiff … need not show that he is certain to win [to be entitled to injunctive relief].") (citations omitted).

A.    **The "factoring agreements" are actually usurious loans.**

45.    The Defendants have intentionally and deceptively mislabeled the agreements at issue as "factoring agreements" in an attempt to avoid being subject to usury and other laws which govern and/or prohibit the agreements themselves and the Defendants' efforts to collect the alleged debt.

46.    Despite their deceptive label, the so-called "factoring agreements" are not sales of accounts receivable under Article 9 of the Uniform Commercial Code, as they purport to be. They are usurious loans. *Kennedy v. Porter*, 170 So. 286, 287 (Miss. 1936) ("The courts, in order to ascertain whether the contract is usurious, will look through the form to the substance; the real facts will control."); *Richardson v. Cortner*, 100 So. 2d 854, 856 (Miss. 1958) (holding that transaction was subject to Mississippi usury laws, after stating "[l]ooking through the form of the transaction, we find the substance to be something quite different from what the form pretends"); *Yeager v. Ainsworth*, 32 So. 2d 548, 554 (Miss. 1947), citing *Dunn v. Midland Loan Finance Corp.*, 289 N.W. 411, 413 (Minn. 1939) ("Whether a particular transaction is usurious [requires] looking through the form to the substance.  No device or shift may be employed to conceal the true character of the transaction."); *Shannon v. Georgia State Building & Loan Ass'n*, 30 So. 51, 52 (Miss. 1901) ("Courts look through all disguises to the real case made by the actual facts."); *William H. Henry & Co. v. Fry*, 137 N.Y.S. 894, 869 (1st Dept. 1912) (applying New York law) ("The fact that the usurer sought to disguise the illegal character of the contract under the cover of a confession of judgment and an agreement of guaranty does not in any

respect better the position of the lender.  It was a mere subterfuge or contrivance to cheat the law.  The law in such cases looks at the substance of the transaction, rather than its superficial appearance. 'Where the real transaction is a loan of money,' said Lord Mansfield, 'the wit of man cannot find a shift to take it out of the statute.'").

47.     When determining whether a transaction like those at issue in this case constitutes a sale or a loan, the dispositive factor is whether the buyer of the accounts receivable retains recourse to collect the funds it advanced to the seller.  *See Nickey Gregory Co., LLC v. AGRICAP, LLC*, 597 F.3d 591, 601-03 (4th Cir. 2010) (using "transfer of risk of loss" test to determine that purported "factoring agreement" was actually loan); *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc.*, 336 F.3d 410, 413-17 (5th Cir. 2003) (holding that alleged "factoring agreement" in reality constituted secured loan because buyer of accounts receivable had recourse against seller).

48.     The facts which compelled the *Nickey Gregory* and *Reaves Brokerage* courts to determine the "factoring agreements" at issue to be loans are present in this case.  Here, the "factoring agreements" gave the Defendants substantial recourse against the Plaintiffs in the event payments were not made.

49.     The Defendants ensured that they would be paid in full.  Among other things, they required Dr. Okorie to personally guaranty full payment of the alleged indebtedness.  They compelled the Plaintiffs to execute unlawful "Confessions of Judgment."  They included as collateral not only certain identified accounts receivable, but "all accounts, including without limitation, all deposit accounts, accounts receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory … now or hereafter

12

owned or acquired by the [Plaintiffs]," as well as all proceeds ...." *See* Ace Funding Source Merchant Agreement, Composite Exhibit "A", Security Agreement and Guaranty, p. 1. The Defendants required that UCC financing statements be filed in order to perfect their security interests in virtually all of the Plaintiffs' assets.

50. The Defendants reserved the right to enter into the premises operated by the Plaintiffs and "take possession of the fixtures and equipment therein" and "assign" the Plaintiffs' lease of the premises to another merchant to continue running the Plaintiffs' business. *Id.*

51. Additionally, the Defendants never took ownership or an assignment of the accounts receivable, nor could they, because the vast majority of the accounts receivable were and are comprised of Medicare and Medicaid payments which could not as a matter of law be assigned to the Defendants.

52. Even if New York law governed the interpretation and enforcement of the "factoring agreements," they would still constitute loans. *Rubenstein v. Small*, 75 N.Y.S.2d 483, 485 (1st Dept. 1947) ("The transaction must be judged by its real character rather than by the form and color which the parties have seen fit to give it. For a true loan it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard.").

53. Finally, the Defendants' post-agreement conduct clearly shows that the "factoring agreements" are in fact loans. The Defendants have engaged in a relentless, continuous, and patently unlawful campaign of harassment and abuse in an effort to compel the Plaintiffs to "*repay*" them and "pay them back."

54. Accordingly, there is a substantial likelihood that the Plaintiffs will prove that the

"factoring agreements" are actually loans subject to usury and other laws.

        **B.**      **The Loans and Confessions of Judgment are void *ab initio*.**

    55.    Contracts that contravene public policy are void *ab initio*. *Hertz Commercial Leasing v. Morrison*, 567 So. 2d 832, 834 (Miss. 1990); *First Nat. Bank of Vicksburg v. Caruthers*, 443 So. 2d 861, 864 n. 3 (Miss. 1983); *Jones v. McFarland*, 173 So. 296, 297 (Miss. 1937).

    56.    Under Mississippi law, the Confessions of Judgment are void as against public policy. Miss. Code Ann. § 11-7-185 ("A judgment rendered on office confession shall be void *in toto* as to third parties, if tainted with fraud or usury."). They are also void because they were obtained in connection with usurious Loans. *See Martin v. Estate of Martin*, 599 So. 2d 966, 969 (Miss. 1992) (holding that Mississippi courts will not enforce contract "when in order to enforce the contract a party must base his cause of action on his own illegal act[, or] where the contract itself is unlawful ....").

    57.    The Loans are usurious and therefore void as against Mississippi public policy. *Kennedy v. Porter*, 170 So. 286, 287-88 (Miss. 1936) ("A contract for usurious interest is a corrupt contract, and is violative of the public policy of this state."); *Richardson v. Cortner*, 100 So. 2d 854, 856 (Miss. 1958) ("The public policy of this State condemns usury ...."); Miss. Code Ann. § 75-17-11; *Id.* § 75-17-21.

    58.    The Loans and Confessions of Judgment are also void as against public policy because they are the product of overreaching by the Defendants. *First National Bank of Vicksburg v. Caruthers*, 443 So. 2d 861, 869 n.3 (Miss. 1983) (citation omitted).

59.     Even if there were no statute or case law expressly declaring so, the Loans and Confessions of Judgment violate public policy based upon the rule articulated by the Mississippi Supreme Court long ago:

> [T]hese usury contracts – so extortionate as to shock the moral sense upon mere statement – were illegal and violated the public policy of this state, and ... *the court of conscience, on well-settled principles, would leave these plunderers where it found them.* Undoubtedly, the usury contracts, to the extent of the usury, were illegal and against public policy. But aside from this feature, we hold, without hesitation, that no such robbing contracts as this record discloses can be other than against the public policy of the state, on account of their extortionate character. While the chief sources for determining the public policy of a nation are its constitution, laws, and judicial decisions, still, however, these are not the sole criteria, and the courts should not hesitate to declare a contract illegal merely because no statute or precedent prohibiting it can be found.

*Woodson v. Hopkins*, 37 So. 1000, 1001 (Miss. 1905) (emphasis added) (citations and internal quotations omitted).

60.     Moreover, upon information and belief, the purported assignment to the Defendants of Medicare and Medicaid accounts receivable and payments violates Federal law. *See* 42 U.S.C. § 1395g(c) ("Payments under assignment or power of attorney. No payment which may be made to a provider of services under this subchapter for any service furnished to an individual shall be made to any other person under an assignment or power of attorney ....").

61.     Congress' purpose in enacting this and other similar provisions "was to prevent 'factoring' agencies [like the Defendants] from purchasing medicare and medicaid accounts receivable at a discount and then serving as the collection agency for the accounts." *Matter of Missionary Baptist Foundation of America, Inc.*, 796 F.2d 752, 764 n.6 (5th Cir. 1986) (citations omitted).

62.     Accordingly, this Court not only should, but has a duty to declare the Confessions of Judgment and Loans unenforceable and void *ab initio*.  *Smith v. Simon*, 224 So. 2d 565, 566 (Miss. 1969) ("There is no doubt that the courts have the duty and the power to declare void and unenforceable contracts made in violation of law or in contravention of the public policy of this state.").

**C.     The Defendants' unlawful conduct in attempting to collect the alleged debt.**

63.     Not only are the Loans and Confessions of Judgment upon which the Defendants base their actions void, but their conduct in attempting to collect the alleged indebtedness upon which their actions are based is egregious and patently unlawful.

64.     The Defendants have committed and continue to commit the tort of intentional infliction of emotion distress against Dr. Okorie by falsely accusing him of committing a crime, threatening to file criminal charges against him, harassing and using abusive language in an attempt to collect a debt.  *See Lyons v. Zale Jewelry Company*, 150 So. 2d 154, 159-60 (Miss. 1963); *Dennis v. Travelers Ins. Co.*, 234 So. 2d 624, 626 (Miss. 1970); *Nichols v. Tri-State Brick and Tile Co., Inc.*, 608 So. 2d 324, 332 (Miss. 1992).

65.     The Defendants have violated and continue to violate the Fair Debt Collection Practices Act by, among other things, harassing and engaging in oppressive and abusive practices and language; repeatedly calling and texting Dr. Okorie; and by making false, deceptive or misleading representations by falsely representing that nonpayment will result in Dr. Okorie's arrest or imprisonment, that he committed a crime, misrepresenting the character, amount and legal status of the alleged "debt" at issue, and by misrepresenting their true names and identities.  *See* 15 U.S.C. §§ 1692e(2)(A), (3), (4), (7), (14).

66.     The Defendants have violated and continue to violate the Mississippi RICO Act, Miss. Code Ann. §§ 97-31-1, *et seq*., by collecting, attempting to collect, and/or conspiring to collect an unlawful debt.   Miss. Code Ann. § 97-43-5 provides:

> (1) It is unlawful for any person who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of racketeering activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.
>
> (2) It is unlawful for any person, through a pattern of racketeering activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.
>
> (3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.
>
> (4) It is unlawful for any person to conspire to violate any of the provisions of subsections (1), (2) or (3) of this section.

"Unlawful debt" is defined as

> money or any other thing of value constituting principal or interest of a debt which is legally unenforceable in whole or in part because the debt was incurred or contracted in … the business of lending money at a rate usurious under state law, where the usurious rate is at least twice the enforceable rate.

Miss. Code Ann. § 97-43-3(b).   The Plaintiffs are entitled to bring a civil action against the Defendants under the Mississippi RICO Act.   Miss. Code Ann. § 97-43-9(6).

67.     The Defendants have violated and continue to violate Mississippi usury laws by charging and collecting exorbitant interest rates which are least twice those allowed by Mississippi law.   *See* Miss. Code Ann. §§ 75-17-11, 75-17-21.

17

68.     The Defendants have committed and continue to commit the torts of abuse of process and conversion by enrolling and using void Confessions of Judgment to seize and take funds from the Plaintiffs' bank accounts.

### Immediate and Irreparable Injury

69.     The Plaintiffs will suffer immediate and irreparable injury unless the Defendants' unlawful and egregious conduct is enjoined.

70.     Dr. Okorie has endured the Defendants' verbal assaults and threats over the Christmas holidays, and he continues to suffer from their relentless and unlawful campaign of abuse and harassment.   In addition, the Defendants have unlawfully seized and continue to unlawfully seize the Plaintiffs' bank accounts, including the personal checking and savings accounts of Dr. Okorie.

### Threatened Injury to the Plaintiffs versus Harm to the Defendants

71.     The injury to the Plaintiffs substantially outweighs any possible harm to the Defendants.

72.     There is no risk that they will suffer harm by the Court's issuance of a temporary restraining order.   The Defendants have already recovered the principal and exorbitant interest on the Loans.   Moreover, the Defendants' conduct estops them from claiming they are harmed by having to proceed legally to collect any amounts allegedly owed to them.

73.     On the other hand, as stated above, Dr. Okorie has endured the Defendants' verbal assaults and threats over the Christmas holidays, and he continues to suffer from their relentless campaign of abuse and harassment.   Additionally, the Defendants have unlawfully seized and

continue to unlawfully seize the Plaintiffs' bank accounts, including the personal checking and savings accounts of Dr. Okorie.

### Public Interest

74.     The laws which the Defendants have deliberately violated, and which they continue to violate, are matters of public policy.

75.     It is manifestly in the public's interest for this Court to enjoin continuing, egregious, and blatantly unlawful conduct, and the abuse of one of the State's citizens. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2948.4 (1995) ("A federal statute prohibiting the threatened acts that are the subject matter of the litigation has been considered a strong factor in favor of granting a preliminary injunction.") (citations omitted).

### Efforts to Provide Notice

76.     Pursuant to Fed. R. Civ. P. 65(b)(1)(B), the undersigned attorney for the Plaintiffs will provide notice to the Defendants and/or their attorneys.

### Security

77.     The Plaintiffs are prepared to post reasonable security.   Fed. R. Civ. P. 65(c).

ACCORDINGLY, the Plaintiffs respectfully request that the Court grant the following relief:

A.     A Temporary Restraining Order enjoining the Defendants and their employees, agents or representatives from:

1.     Contacting or communicating with any of the Plaintiffs, verbally, in writing, or in any other form or manner, regarding the subject matter herein; *and*

2.      Seizing, freezing, garnishing, or taking any action whatsoever against or in connection with any of the Plaintiffs' bank accounts, funds, or property, wherever located.

B.      An Order compelling the Defendants to immediately:

1.      Withdraw all Judgments by Confession and related documents filed in *Ace Funding Source, LLC v. St. Michael's Urgent Care of Hattiesburg, LLC, et al.*, in the Supreme Court of the State of New York, County of Richmond, Index No. 16 151798/2016, as well as any Confessions of Judgment, Judgments by Confession, all related documents involving or naming any of the Plaintiffs filed in any other court;

2.      Release, withdraw and vacate the seizure, garnishment, and/or related action in connection with any of the Plaintiffs' the bank accounts as well as any and all funds therein; and

3.      Refund to the Plaintiffs any and all funds taken from any of the Plaintiffs' bank accounts in connection with or through the use of the Judgment by Confession above or otherwise since December 20, 2016.

FURTHER, the Plaintiffs request that the Court award them their costs, expenses and attorneys' fees in bringing this action, and any and all additional relief the Court deems appropriate.

FURTHER, the Plaintiffs request that the Court set a hearing to determine whether to convert the Temporary Restraining Order into a Preliminary Injunction within the time required under Fed. R. Civ. P. 65(b)(3).

[SIGNATURE AND NOTARY PAGE FOLLOWS]

Respectfully submitted, this the 5th day of January, 2017.

> IKECHUKWU OKORIE, M.D.,
> ST. MICHAEL'S URGENT CARE
> OF HATTIESBURG, LLC, INLAND
> FAMILY PRACTICE
>
> Ikechukwu Okorie, M.D.

STATE OF MISSISSIPPI

COUNTY OF FORREST

THIS DAY personally appeared before me the undersigned authority at law in and for the State and County aforesaid, the within named IKECHUKWU OKORIE, M.D., who being by me first duly sworn, stated on his oath that the facts and matters set forth in the above and foregoing Verified Complaint are true and correct as therein stated; that he is the owner of St. Michael's Urgent Care of Hattiesburg, LLC and Inland Family Practice Center and that he is duly authorized to execute this Verified Complaint on their behalf.

SWORN TO AND SUBSCRIBED BEFORE ME on this the 5 day of January, 2017.

NOTARY PUBLIC

My Commission Expires: 12 5 2020

ATTORNEY FOR PLAINTIFFS

By: _____

William C. Walter
Miss. Bar No. 10145
WILLIAM C. WALTER, PLLC
140 Township Avenue, Suite 222
Ridgeland, MS 39157
P 601.982.5011/ F 601.853.9540